UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **EDCV 16-1261-KK** | Date: | August 16, 2017 |
| Title: | ***Randy Conan, et al. v. City of Fontana, et al.*** | | |

Present: The Honorable KENLY KIYA KATO, UNITED STATES MAGISTRATE JUDGE

| DEB TAYLOR | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

Proceedings:    **Order (1) Denying Plaintiffs' Motion for Sanctions Based on Spoliation of Evidence [Dkt. 73]; (2) Denying Plaintiffs' Motion for Declaratory/Injunctive Relief [Dkt. 74]; and (3) Vacating Hearing Set For August 17, 2017**

## I.
## SUMMARY OF RULING

On July 18, 2017, Plaintiffs Randy Conan ("Plaintiff") and Xylina Conan (collectively, "Plaintiffs") filed a Motion for Sanctions Based on Spoliation of Evidence and a Motion for Declaratory/Injunctive Relief. ECF Docket No. ("Dkt.") 73, Spoliation Motion; Dkt. 74, Declaratory Relief Motion. As set forth below, the Court DENIES Plaintiffs' motions. The hearing currently set for August 17, 2017 is hereby VACATED.

## II.
## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

On June 14, 2016, Plaintiffs commenced the instant action by filing a complaint against defendants pursuant to 42 U.S.C. § 1983. Dkt. 1.

On January 30, 2017, following a motion to amend, Plaintiffs filed the instant Third Amended Complaint ("TAC") against defendants City of Fontana, Joshua Patty, Kurtis Schlotterback, Adam Clabaugh, Matthew Roth, Steven Bechtold, and Bradley Guith ("Defendants"). Dkt. 40. The TAC raised the following eight causes of action: (1)

"Unreasonable Search and Seizure – Excessive Force (42 U.S.C. § 1983)" against Officer Patty; (2) "Unreasonable Search and Seizure – Denial of Medical Care (42 U.S.C. § 1983)" against Officers Patty, Schlotterback, Clabaugh, Roth, Bechtold, and Guith; (3) "Municipal Liability – Ratification (42 U.S.C. § 1983)" against City of Fontana and Officers Schlotterback, Clabaugh, Roth, Bechtold, and Guith; (4) "Municipal Liability – Inadequate Training (42 U.S.C. § 1983)" against City of Fontana and Officers Schlotterback, Clabaugh, Roth, Bechtold, and Guith; (5) "Municipal Liability – Unconstitutional Custom, Practice or Policy (42 U.S.C. § 1983)" against all Defendants; (6) Battery against all Defendants; (7) Negligence against all Defendants; and (8) Loss of Consortium against all Defendants. Id.

According to the TAC, defendant Patty, a police officer for the City of Fontana, assaulted Plaintiff as he was being escorted out of Kicks Sports Bar on the evening of August 30, 2015. Id. ¶¶ 19, 22. Plaintiffs allege Defendants failed to offer any medical assistance despite the fact Plaintiff was injured following the alleged assault. Id. ¶ 24. Plaintiffs allege Defendants attempted to cover up the incident by writing false reports and claim that defendant Patty was never disciplined for his actions. Id. ¶¶ 25, 26. Thus, Plaintiffs are seeking punitive and compensatory damages for the resulting injuries "and such further relief as the Court may deem just, proper and appropriate." Id. at 27-28.

On February 16, 2017, Defendants' counsel sent Plaintiffs' counsel a letter confirming Defendants possessed only four surveillance videos from Kicks Sports Bar from the night of the incident. Declaration of Chariese R. Solorio in support of Opposition to Declaratory Relief Motion ("Solorio Relief Decl."), ¶ 2, Ex. A.

On April 21, 2017, defendant Roth, in response to Plaintiffs' Interrogatories, Set One, explained that the bar owner, Diego Varillas Loo, "gave" defendant Roth video surveillance footage, which defendant Roth downloaded onto a CD and booked into evidence at the Fontana Police Station. Solorio Relief Decl., ¶ 5, Ex. D.

On May 22, 2017 and June 19, 2017, Plaintiffs deposed Mr. Loo. Declaration of Marjorie Barios in support of Reply re: Spoliation Motion ("Barios Reply Decl."), ¶ 4, Ex. W.

///
///
///
///
///
///
///
///
///
///
///

On July 18, 2017, Plaintiffs filed the instant Spoliation and Declaratory Relief Motions. Dkts. 73, 74. On July 27, 2017, Defendants filed Oppositions. Dkts. 86, 88. On August 2, 2017, Plaintiffs filed Replies. Dkts. 92, 93. This matter thus stands submitted and ready for decision.[1, 2]

**III.**

**DISCUSSION**

**A.  PLAINTIFFS' SPOLIATION MOTION IS DENIED**

Plaintiffs seek terminating sanctions for spoliation of evidence. While not entirely clear,[3] it appears Plaintiffs believe Defendants destroyed the following evidence: (a) "[c]lear and unadulterated footage of Patty's last three elbow strikes to [Plaintiff's] head" from defendant Patty's body camera; (b) the bar's original video surveillance from the "closed-circuit television

---

[1] Plaintiffs also filed Requests for Judicial Notice in support of both motions requesting the Court take judicial notice of (a) a Press Release found on the official website of the San Bernardino District Attorney's Office; (b) an article on "Facts About Concussion and Brain Injury" found on the official website of Centers for Disease Control; and (c) the truth of a statement in a news report made by Martha Guzman Hurtado, a police spokeswoman for Fontana Police Department. Dkts. 73-12, 74-11. Defendants filed Oppositions. Dkts. 87, 89. Under Federal Rule of Evidence 201, the Court can judicially notice "[o]fficial acts of the legislative, executive, and judicial departments of the United States," and "[f]acts and propositions that are not reasonably subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy." Fed. R. Evid. 201. Moreover, "to the extent the court *can* take judicial notice of press releases and news articles, it can do so only to 'indicate what was in the public realm at the time, not whether the contents of those articles were in fact true.'" Gerritsen v. Warner Bros. Entm't Inc., 112 F. Supp. 3d 1011, 1029 (C.D. Cal. 2015) (quoting Von Saher v. Norton Simon Museum of Art at Pasadena, 592 F.3d 954, 960 (9th Cir. 2010)). Here, Plaintiffs seek to have the Court judicially notice the facts contained in the articles as true. Therefore, Plaintiffs' Requests for Judicial Notice are DENIED.

[2] The Court is cognizant the parties' motions, oppositions, replies, and supporting evidence have all been filed under seal. However, the Court finds there is no good cause to seal this Order.

[3] Part of the Court's difficulty deciphering Plaintiffs' motions arises from their repeated failure to cite to the record or relevant law in support of their many bold assertions. For example, Plaintiffs fail to provide any evidence supporting their assertion they made "exhaustive efforts to procure the evidence." Spoliation Reply at 7. Plaintiffs state "Kicks Sports Bar was subpoenaed to produce the complete footage. This was unavailing." Id. Despite these claims, Plaintiffs fail to cite to any declaration or exhibit showing such a subpoena exists, was served, or how it was "unavailing," nor does the Court's review of the parties' declarations and exhibits provide any evidence such a subpoena exists or when it was served on Kick's Sports Bar.

---

system [that] had at least eight camera angles"; and (c) the identity of witnesses "who may have seen Patty remove the [body] camera and other valuable details." Spoliation Motion at 20-23.

1.      **Applicable Law**

A party seeking sanctions for spoliation of evidence has the burden of establishing the following elements by a preponderance of the evidence: "(1) the party having control over the evidence had an obligation to preserve it when it was destroyed or altered; (2) the destruction or loss was accompanied by a 'culpable state of mind;' and (3) the evidence that was destroyed or altered was 'relevant' to the claims or defenses of the party that sought the discovery of the spoliated evidence." Surowiec v. Capital Title Agency, Inc., 790 F. Supp. 2d 997, 1005 (D. Ariz. 2011); Reinsdorf v. Skechers U.S.A., Inc., 296 F.R.D. 604, 626 (C.D. Cal. 2013) (same); Ramos v. Swatzell, No. EDCV 12-1089-BRO (SPx), 2017 WL 2857523, at *5 (C.D. Cal. June 5, 2017), report and recommendation adopted, 2017 WL 2841695 (C.D. Cal. June 30, 2017) (quoting Compass Bank v. Morris Cerullo World Evangelism, 104 F. Supp. 3d 1040, 1052-53 (S.D. Cal. 2015)). "One of the elements of a spoliation claim is that the party must demonstrate the evidence actually existed and was destroyed." Fernandez v. Centric, No. 3:12-CV-00401-LRH, 2014 WL 2042148, at *9 (D. Nev. May 16, 2014).

2.      **Plaintiffs Fail To Prove That The Body Camera Or Potential Witness Evidence Ever Existed**

Regarding defendant Patty's body camera video, Plaintiffs argue the additional footage would have shown Plaintiff was unconscious when defendant Patty struck him. Spoliation Motion at 20. Plaintiffs argue defendant Patty "destroyed" this evidence by removing his body camera.[4] Id. However, Plaintiffs have failed to establish this additional body camera footage ever existed; rather, Plaintiffs fault Defendants precisely because, due to the camera being removed or falling off, the video never existed. See Fernandez, 2014 WL 2042148, at *9.

Regarding the alleged additional four angles of video surveillance, Plaintiffs argue (1) there was surveillance video that defendant Roth testified showed Plaintiff Randy Conan elbowing defendant Patty, which is not shown in the four angles of the surveillance video that were provided by Mr. Loo to defendant Roth, and (2) there is a notation on one of the four videos Mr. Loo provided "noting it is camera number 8 on the left corner of the screen," implying "[a]t least eight cameras were present in the bar." Spoliation Motion at 21-22; Barios Spoliation Decl., Ex. A 88:17-18; Exs. C, J-M. While this evidence implies there is additional surveillance video that neither party has, it does not prove that there are four additional angles that were not captured, because, for example, there is no testimony regarding what cameras were operational

---

[4] Plaintiffs do not dispute the authenticity of defendant Patty's body camera video that was preserved and produced to Plaintiffs during the course of this litigation. Barrios Spoliation Decl., ¶ 7, Ex. F.

on the night of the incident. Nevertheless the parties seem to agree that there was additional surveillance video that neither party currently has in its possession.[5]

Finally, regarding the potential witness identities that defendant Roth allegedly failed to collect, Plaintiffs have not established their identities were ever known to Defendants; rather, Plaintiffs again fault Defendants precisely because no documentation of their identities ever existed. See Fernandez, 2014 WL 2042148, at *9.

Therefore, to the extent Plaintiffs seek sanctions for the alleged destruction of defendant Patty's additional body camera footage or identities of potential witnesses that Defendants never collected, Plaintiffs fail to prove the body camera footage or witness identities ever existed.

### 3. Plaintiffs Failed To Show Defendants Were In Possession Of The Video Surveillance Evidence At The Time It Was Allegedly Destroyed

Plaintiffs state that defendant Roth's viewing of the surveillance video on the night of the incident "is sufficient for possession" in a spoliation motion. Spoliation Reply at 8. Plaintiffs provide no case law, nor is the Court aware of any, to support the novel position that a civilian showing a police officer a video gives the officer possession or control over the video without consent, a warrant, or exigent circumstances – none of which are present here. Therefore, Plaintiffs have failed to prove Defendants had control over the evidence at the time it was allegedly destroyed.

### 4. Plaintiffs Failed To Show Defendants Had A Duty To Collect The Video Surveillance Evidence

Plaintiffs appear to be arguing that Defendants' failure to collect the surveillance video and prevent the bar from destroying it in the normal course of business, is the same as if Defendants had destroyed the video themselves. However, the law does not impose a duty on parties to civil litigation to collect evidence for the opposing party. See Fowler v. Wal-Mart Stores, Inc., No. 2:16-CV-450-JCM (GWF), 2017 WL 3174915, at *3 (D. Nev. July 26, 2017) (holding the "law does not . . . require Wal-Mart to create photographic evidence" and therefore reversing magistrate judge finding that Wal-Mart was negligent for not taking additional photographs and that such failure constituted spoliation of evidence); see also Tchatat v. O'Hara, No. 14-CIV-2385-LGS-GWG, 2017 WL 1379097, at *5 (S.D. N.Y. Apr. 14, 2017), objections overruled sub nom. Tchatat v. Police Officer Liam O'Hara, 2017 WL 3172715 (S.D.

---

[5] In addition, Plaintiffs fail to provide any evidence from which the Court could find the surveillance video no longer exists. For example, as discussed supra fn. 2, Plaintiffs have not shown they subpoenaed the bar and have not submitted any testimony supporting the allegation that the video was not preserved. However, since both parties appear to assume the complete surveillance video as it existed on the night of the incident no longer exists, the Court will make a similar assumption for purposes of this Spoliation Motion.

N.Y. July 25, 2017) (noting "no case law supports the notion that an arrest invariably triggers a duty to preserve evidence of the arrest for potential civil litigation").

Moreover, even in a criminal prosecution, there is no free-floating obligation to preserve evidence, and Plaintiffs cite to no case that so holds. While there are potentially serious consequences to the viability of the prosecution if relevant evidence is lost, the court-imposed obligation is only to make available evidence favorable to the accused, see Brady v. Maryland, 373 U.S. 83, 86–87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), and thus, to preserve it, see, e.g., Grega v. Pettengill, 123 F. Supp. 3d 517, 537 (D. Vt. 2015) (citing Brady, 373 U.S. at 87). The Brady obligation applies to evidence that is actually favorable to the accused, not to "preliminary, challenged, or speculative information." United States v. Agurs, 427 U.S. 97, 109 n.16, 96 S. Ct. 2392, 49 L. Ed. 2d 342 (1976) (citation omitted). In Arizona v. Youngblood, 488 U.S. 51, 109 S. Ct. 333, 102 L. Ed. 2d 281 (1988), the Supreme Court specifically refused to "impos[e] on the police an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution." See id. at 58. It expanded the Brady obligation only to the extent of holding that a criminal defendant could show a due process violation if the defendant proved that the police acted with "bad faith" in failing to preserve "potentially useful evidence." Id.

Here, even if the Court were to import the Brady and related obligations arising from criminal prosecutions into the spoliation analysis, the Court could not conclude that any purported violation of this duty would justify spoliation sanctions. The Court cannot make a finding on the current record that the evidence in question was exculpatory or that the police officers acted in bad faith as described in Youngblood, which would be a prerequisite to finding any duty to preserve. First, Plaintiffs argue the video would show Plaintiff did not elbow defendant Patty, despite defendant Roth's testimony that he saw Plaintiff elbow defendant Patty in the video he viewed. However, Plaintiffs argue, once again without evidence, that the video would have exculpated Plaintiff of the crime of which Plaintiffs say he was convicted pursuant to section 602(1) of the California Penal Code. See Relief Reply at 18. However, Plaintiffs fail to prove the conviction was based on Plaintiff having elbowed defendant Patty, rather than his refusing to leave the bar as requested. Therefore, it is highly speculative that the video would have been exculpatory even if it showed what Plaintiffs argue it would show.[6] Second, Plaintiffs argue bad faith is proven because the failure to collect the additional evidence goes against Fontana Police Department's stated policy of fully investigating use of force incidents. Spoliation Motion at 23-24; Spoliation Reply at 14-18. Whether Fontana Police Department adequately investigated the use of force against Plaintiff is a disputed issue of fact that will have to await trial. See Knight v. Deere & Co., No. 2:08-CV-01903-GEB (EFB), 2010 WL 1948311, at *5 (E.D. Cal. May 11, 2010) (denying spoliation motion because motion would have required court to resolve factual dispute before trial). Therefore, even if the Court applied the law relating to

---

[6] The Court cautions Plaintiffs that arguments seeking to undermine the validity of Plaintiff's conviction raise serious concerns under Heck v. Humphrey, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994)

collection of evidence in criminal cases into the civil context, Plaintiffs have not satisfied their burden to prove Defendants had a duty to collect the surveillance video.

### 5. The Court Cannot Impute A Non-Party's Alleged Destruction Of The Video Surveillance Evidence On Defendants

Finally, even if Plaintiffs had proven the bar destroyed the video, the Court will not impute the non-party's destruction of evidence on Defendants. "'[S]poliation of evidence may be imputed to a [party] who did not participate in the spoliation' only where the destroying party is the 'agent' of that party." Gemsa Enterprises, LLC v. Specialty Foods of Alabama, Inc., No. LACV 13-00729-JAK (RZx), 2015 WL 12746220, at *5 (C.D. Cal. Feb. 10, 2015) (citing Pettit v. Smith, 2014 WL 4425779, at *8 (D. Ariz. Sept. 9, 2014)). There is no evidence the bar or Mr. Loo were acting as agents of Defendants. Hence, the Court cannot find Defendants are responsible for the alleged destruction of the surveillance video.

Therefore, Plaintiffs' Spoliation Motion must be DENIED because Plaintiffs fail to prove (1) the additional body camera footage and witness identities ever existed, and (2) Defendants (a) were in possession of the surveillance video at the time it was allegedly destroyed, (b) had a duty to collect the surveillance video, or (c) can be held responsible for the bar's alleged destruction of the surveillance video.

## B. PLAINTIFFS' MOTION FOR DECLARATORY AND INUNCTIVE RELIEF IS DENIED

Plaintiffs seek a declaration that Policy 804.2 is unconstitutional and injunctive relief requiring the Fontana Police Department to "follow its written policies on preservation of evidence and investigations into use of force incidents where security footage is available." Relief Motion at 23.

### 1. Applicable Law

A "motion for declaratory judgment" must be construed as a motion for summary judgment on an action for declaratory judgment. Kam-Ko Bio-Pharm Trading Co. Ltd-Australasia v. Mayne Pharma (USA) Inc., 560 F.3d 935, 943 (9th Cir. 2009) (affirming denial of "motion" for declaratory judgment after construing motion as a motion for summary judgment).

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure if the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). A genuine issue of material fact will exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

When ruling on a summary judgment motion, the district court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (citation omitted).  Summary judgment is therefore not appropriate "where contradictory inferences may reasonably be drawn from undisputed evidentiary facts."  Hollingsworth Solderless Terminal Co. v. Turley, 622 F.2d 1324, 1335 (9th Cir. 1980).  Furthermore, the Court must not make credibility determinations with respect to the evidence offered.  See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630-31 (9th Cir. 1987) (citing Matsushita, 475 U.S. at 587).

## 2.  Plaintiffs Have Failed To Satisfy Their Burden To Show Policy 804.2 Is Unconstitutional

As an initial matter, Plaintiffs' Motion for Declaratory/Injunctive Relief is untimely. Pursuant to the Court's Scheduling Order, motions for summary judgment or partial summary judgment "shall be filed as soon as practical, however, in no event later than forty-nine (49) days before the [August 17, 2017] motion cut-off date."  Dkt. 29.  Therefore, Plaintiffs' Motion should have been filed no later than June 29, 2017, but was not filed until July 28, 2017.  Plaintiffs argue it is timely because the motion for injunctive relief is not a motion for summary adjudication. Relief Reply at 9.  However, Plaintiffs' request for injunctive relief is dependent on its motion for declaratory relief, which is necessarily construed as a motion for summary adjudication, see Kam-Ko Bio-Pharm Trading, 560 F.3d at 943.  Plaintiffs also argue Defendants "refus[al] to release any investigations into use of force delayed the process."  Relief Reply at 9.  It is unclear to the Court how other investigations into use of force are relevant to the determination of whether Fontana Police Department's Policy 804.2 is unconstitutional on its face.  Hence, the Court finds the Motion for Declaratory/Injunctive Relief violates the Court's Scheduling Order and may be denied on that basis.

Turning to the merits of Plaintiffs' Motion, Plaintiffs claim Policy 804.2 is unconstitutional because it defines "evidence" to "include[] items taken or recovered in the course of an investigation that may be used in the prosecution of a case."  Barios Relief Decl., Ex. R at 804.2.  Policy 804 is the Fontana Police Department's Policy on the "proper collection, storage, and security of evidence and other property."  Id. at 804.1.  There is nothing in the *definition* of "evidence" concerning what evidence police officers may or must collect.  Rather, on its face, the policy addresses the proper manner to collect, store, and secure evidence to ensure it is not inadvertently destroyed.  Therefore, Plaintiffs' argument that this definition somehow requires officers to only collect "inculpatory"[7] evidence is absurd.  See Relief Motion at 13.

---

[7] It appears Plaintiffs' statement on page 15 of the Relief Motion that Policy 804.2 is unconstitutional because "[o]nly exculpatory evidence is ordered to be preserved" is a clerical error.  Relief Motion at 15.

Second, it is unclear what constitutional provisions Plaintiff is alleging are violated by Policy 804.2. Plaintiffs respond to a similar concern raised by Defendants by stating: "Numerous would be the flippant answer, including the First Amendment right to seek redress. However, the brief clearly states the policy violates the teachings of <u>California v. Trombetta</u>, 467 U.S. 479 (1984). And the fact . . . the willful failure to investigate was a moving force in this case."[8] Relief Reply at 14.

Plaintiff does not explain, and it is unclear to the Court, how Plaintiffs' First Amendment right to seek redress from the courts is violated by a failure to collect evidence that Plaintiff has not proven Defendants had a constitutional obligation to collect.

In <u>Trombetta</u>, the U.S. Supreme Court held a criminal defendant's due process rights could be violated by destruction of evidence where the "evidence possess[es both] an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." <u>California v. Trombetta</u>, 467 U.S. 479, 489, 104 S. Ct. 2528, 81 L. Ed. 2d 413 (1984). As discussed above, viewing the evidence in the light most favorable to the non-moving party, Plaintiffs have not shown Defendants violated <u>Brady</u>, <u>Trombetta</u>, or Plaintiff's due process rights by failing to collect the video. Here, defendant Roth viewed the video on the night of the incident, but did not collect it as evidence. When Mr. Loo, a civilian, emailed defendant Roth portions of the video footage, the email was collected, stored, and secured as required. Solorio Relief Decl., ¶ 7, Ex. F. Therefore, Plaintiffs have not satisfied their burden to show Policy 804.2 violates the Fourteenth Amendment due process clause.

Finally, a "willful failure to investigate" use of force, standing on its own, is not a constitutional violation. To establish a policy of omission, Plaintiffs must show that "the municipality's deliberate indifference led to its omission and that the omission caused the employee to commit the constitutional violation." <u>Hernandez v. City of Napa</u>, 781 F. Supp. 2d 975, 1001 (N.D. Cal. 2011) (citation omitted). Therefore, a "failure to investigate" only supports liability if the failure to investigate led to a constitutional violation. As discussed above, viewing the evidence in the light most favorable to the non-moving party, Plaintiffs have failed to prove an underlying constitutional violation, and hence, Plaintiffs are not entitled to declaratory relief based on a policy that allegedly led to Defendants' willful failure to investigate.

## IV.
## <u>CONCLUSION</u>

**IT IS THEREFORE ORDERED** that Plaintiffs' Motions are DENIED. Dkts. 73, 74.

---

[8] The Court recommends Plaintiffs' counsel avoid unsupported, "flippant" answers in the future.